

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 14, 2020 Session

## FRIENDSHIP WATER CO. v. CITY OF FRIENDSHIP, TENNESSEE

Appeal from the Circuit Court for Crockett County
No. 2018-CV-3459  Clayburn Peeples, Judge
_____

### No. W2019-02039-COA-R9-CV
_____

Subsequent to the grant of partial summary judgment in the trial court, we granted an application for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.  Having reflected upon the specific issue for which our Rule 9 order granted review, we are of the opinion that the present appeal was improvidently granted as framed.  In addition, we observe that the trial court's partial summary judgment order fails to clearly articulate the legal grounds upon which that order is based.  Given our conclusion that the interlocutory appeal was improvidently granted, we dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined

S. Leo Arnold and Matthew W. Willis, Dyersburg, Tennessee, for the appellant, City of Friendship, Tennessee.

James S. Wilder, III, Becky Dykes Bartell and Christine A. Coronado, Dyersburg, Tennessee, for the appellee, Friendship Water Co.


### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# BACKGROUND AND PROCEDURAL HISTORY[2]

The parties to this appeal are Friendship Water Co. ("the Company") and the City of Friendship, Tennessee ("the City"). The dispute between these parties concerns a contract that they entered into approximately three decades ago. The contract, which is dated November 6, 1989, memorializes various obligations between the parties, including the Company's agreement to sell certain real and personal property to the City and the City's agreement to purchase water exclusively from the Company. In relevant part, the contract provides as follows:

> 1. Company agrees to sell and City agrees to purchase Company's distribution system which includes all underground water mains and a steel water storage tank of approximately 150,000 gallons but excludes Company's pumping system which shall remain an asset of Company. Company's water mains begin at Company's master meter and continue throughout the city limits of the City of Friendship but do not include any customer service lines which are owned by individual customers.
>
> 2. City agrees to pay Company the sum of $13,500.00 for the distribution system and three (3) Lots. Payment shall be in cash at closing.
>
> 3. City agrees to purchase Water from Company for a period of ninety-nine (99) years from closing. City further agrees that during that period of time it will purchase Water from no other source nor will it provide its own pumping facility so long as Company provides Water to City. For purposes of this Agreement, Water shall be defined as Water in its natural state together with the addition of such amounts of chlorine as may now or hereafter be required by the Tennessee Department of Health and Environment. Any other treatment which may be required by any governmental authority shall be the responsibility of City and shall be applied to the Water by City after the Water has passed through Company's master meter.
>
> . . . .
>
> 5. During the ninety-nine (99) year period, Company agrees to pay all of the cost of pumping Water to Company's master meter only including, but not limited to, all labor and electricity for the operation of the pumps, product liability insurance premiums, governmental taxes on pumping facilities and equipment, chlorine, water analysis, office expense, and water operator

---

[2] As discussed herein, the present interlocutory appeal was to involve a review of a grant of partial summary judgment. We observe that several of the facts established at summary judgment were, at that time, undisputed only for purposes of the pending summary judgment motion.

licenses and dues. Company will maintain and/or replace the wells and pumps as necessary to provide Water to City so long as it is the owner of the pumping facilities.

The contract further provides that, for the duration of the ninety-nine year term, the City will pay the Company a minimum annual sum for water, payable in equal monthly installments, as well as paying an additional sum based on "gallons per annum."

Insofar as this record admits, the parties' dealings proceeded largely without incident for approximately twenty-five years following their entry into the contract, and in 2014, an addendum was specifically entered into between the parties in order to adjust payment rates. Complications in the parties' relationship, however, soon arose.

On August 16, 2016, a harmful, manmade contaminant known as tetrachloroethylene ("PCE") was detected by the Tennessee Department of Environment and Conservation ("TDEC") in water samples drawn from the Company's wells. Several months later, on January 24, 2017, representatives of the City, TDEC, and others (but not representatives of the Company) met to discuss the contamination of the Company's water source and the actions needed to develop a new water source and new treatment facilities for the City. On March 6, 2017, the City's Board of Mayor and Aldermen met in regular session and resolved that the City would (i) develop a new well from which it would obtain all of its water in substitution for that furnished by the Company, (ii) notify the Company that the Agreement would be terminated, and (iii) cease purchasing water from the Company upon the City's new well becoming operational. Later that year, on July 28, 2017, the Company was notified through counsel that the City deemed the Company to be in breach of the parties' contract and that the parties' contract would terminate when a new well was available.

On September 6, 2017, the Company's president notified the City by letter that the Company had located a potential new well site. On the same date, however, the City was advised by TDEC that two new wells *developed by the City* were approved for use. Subsequently, in a letter dated September 11, 2017, the City, through its counsel, responded to the Company's September 6 letter and notified the Company's counsel that the City was terminating the parties' contract.

The following year, on March 1, 2018, the Company filed suit against the City in the Crockett County Circuit Court ("the trial court"), asserting claims for breach of contract, inverse condemnation, and specific performance. The City filed an answer in May 2018 requesting that the complaint be dismissed. The City also raised a number of defenses and interposed what it styled as a "Contingent Counter-Claim." The Company filed an answer to the City's "Contingent Counter-Claim" in June 2018, and the following fall, on October 25, 2018, the Company moved for partial summary judgment.

- 3 -

Subsequent to the filing of the Company's motion, the parties filed various papers to advocate for their respective positions on the summary judgment issues. This procedure ultimately culminated in the entry of a July 22, 2019 order, wherein the trial court held that the Company's motion was "well taken and should be granted." Regarding the contract, the court remarked, without any further explanation, that the parties had entered into a "legal contract, pursuant to Tennessee Code Annotated § 7-35-401 *et. seq.*"

The City thereafter moved to pursue an interlocutory appeal of the trial court's partial summary judgment order. The trial court was receptive to the City's position, and finding an interlocutory appeal to be appropriate, it entered an "Order Granting Motion for Interlocutory Appeal." Application was subsequently made to this Court concerning the City's desire for interlocutory review, and on January 21, 2020, we entered an order granting the City's application for an interlocutory appeal. Notably, however, we circumscribed our review to the following defined issue: "Whether City's entry into an exclusive water purchasing agreement with Company was in contravention of a statutory competitive bidding requirement, and if so, whether this ultra vires action renders the agreement void or voidable."

## DISCUSSION

Taking heed of the above-identified issue is important because our inquiry on appeal is limited by it. Indeed, as we have noted before, "[f]or interlocutory appeals, the only issues that can be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal <u>and in the appellate court's order granting the interlocutory appeal</u>." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000) (emphasis added). Having reflected upon this case and the parties' arguments, we have concluded that the question for which we granted review is overly narrow. As we have since come to appreciate, this case does not simply involve "an exclusive water purchasing agreement." It is true, as we discussed, that the parties' contract does involve an agreement whereby the City would purchase water exclusively from the Company. Yet, the parties' contract also entails other obligations, including the purchase of real property.

The limited nature of the issue for which we granted review is apparent from the discourse at the oral argument of this appeal. Specifically, we observe that when counsel for the Company read the certified issue out loud at oral argument, he was questioned by a member of the judicial panel as to whether this meant that we were also dealing with real property in this matter. Whereas counsel respectfully responded to this question in the negative (and appropriately so in our view in light of the narrow issue certified), he subsequently suggested, upon further questioning by another member of the panel, that we would, in fact, also be dealing with real property in this matter. In particular, he alluded to the fact that one of the Company's arguments implicated the real property component of the parties' contract for purposes of establishing an exception to the competitive bidding requirements at issue in this case. We observe that, under the Municipal Purchasing Law

- 4 -

of 1983, an exception exists for contracts entered into for "[p]urchases, leases, or lease-purchases of real property." Tenn. Code Ann. § 6-56-304.

It should be no surprise that the Company desires to invoke certain arguments pertaining to real property. As is now clear to this Court, the contract at issue is much more than "an exclusive water purchasing agreement." In fact, under the terms of the contract, the agreement to purchase water is presented as consideration for a larger property transaction involving realty. In pertinent part, the contract recites as follows:

> Whereas, Company desires to sell and City desires to purchase Company's distribution system together with three (3) tracts of real property . . . owned by Company and more particularly described on Exhibits A, B and C attached hereto for the consideration and under the terms and conditions hereinafter set forth.

Because the issue for which we granted review does not adequately present what is at stake in light of the parties' contract in this case, we are of the opinion that this interlocutory appeal was improvidently granted as framed.[3]

Independent of our discussion above, we have concern about even broaching a review of the trial court's partial summary judgment order. Namely, on the issue of the parties' contract, the trial court merely recited that it was a "legal contract, pursuant to Tennessee Code Annotated § 7-35-401 *et. seq.*" There is no analysis in the trial court's order explaining why this is a legal contract, and when pressed by the panel about this matter at oral argument, counsel for the City stated that he did not understand the trial court's ruling and thereafter speculated as to the court's rationale. Counsel for the City later again acknowledged that the order was "vague" and that there was "not an explanation," stating that he had "no basis for looking into the judge's head to determine why he felt as he ruled." For his part, when counsel for the Company was asked how this Court could effectively review this case, he opined as to what he believed the trial court

---

[3] From the parties' submissions to this Court in advance of the Rule 9 order granting review, it was not made clear to this Court that the water purchasing component of the parties' contract was consideration for the real property transfer that occurred under the contract. As such, the Court was not adequately informed about the true nature of the contractual arrangement between the parties and was certainly not apprised of the corresponding argument advanced by the Company on appeal that relies on the water purchasing agreement being tied to the contract's provisions regarding real property. We note that the City's Rule 9 application focuses the discussion on the water component of the contract (as if the component was severable), stating, for example, that "[t]he purchase of water from a well owner for supplying a municipality's water system *does not fall within any of the exceptions listed* in [the competitive bidding statute]. As such, Friendship was obligated to engage in competitive bidding before entering into a contract with Company for the provision of water." (emphasis added). The Company, despite now stressing to the Court that the contract involves real property, also failed to clearly explain that the matters on appeal would involve anything other than an isolated agreement pertaining to the sale of water. Its answer to the Rule 9 application, for instance, simply states that the "parties entered into a contract for the sale of water."

was "looking at" even though the trial judge "may not have said it."

As it is, the trial court's order does not provide a satisfactory explanation as to why the court concluded that the parties' contract was legally valid. Accordingly, this largely leaves this Court in an untenable position to speculate. Under the rules of civil procedure, this should not be the case. As this Court has explained:

> In 2007, Tennessee Rule of Civil Procedure 56.04 was amended to require the trial court to "state the legal grounds upon which the court denies or grants the motion," and to include such statement in the order reflecting the trial court's ruling. When the legal grounds for the trial court's decision are omitted, a reviewing court cannot analyze the decision's validity, and appellate review becomes unnecessarily speculative. "Without such a statement ... a reviewing court is left to wonder on what grounds the trial court granted the motion for summary judgment." *Eluhu v. HCA Health Servs. Of Tenn. Inc.,* No. M2008-01152-COA-R3-CV, 2009 WL 3460370, at *21[.] The 2007 amendment to Tenn. R. Civ. P. 56.04 was intended to cure this problem. The Rule's requirements are specific and without exception. Tenn. R. Civ. P. 56.04; *see also Eluhu,* 2009 WL 3460370, at *21(vacating the trial court's grant of summary judgment upon finding that the trial court did not state the legal grounds upon which the trial court granted the motion); *Burse v. Hicks,* No. W2007-02848-COA-R3-CV, 2008 WL4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008)(finding noncompliance with Rule 56.04 where trial court's order merely provided "it is hereby ordered, adjudged and decreed that the Motion for Summary Judgment of [the defendant] is well taken and should be granted pursuant to law and there being no material disputed fact," but proceeding with appellate review upon a finding that there was only a "clear legal issue").

*Winn v. Welch Farm, LLC*, No. M2009-01595-COA-R3-CV, 2010 WL 2265451, at *5 (Tenn. Ct. App. June 4, 2010). In addition to assisting with appellate review, the requirement in Rule 56.04 that the trial court state the legal grounds for its decision helps promote respect for and acceptance of the legal system. *Bertuccelli v. Haehner*, No. E2017-02068-COA-R3-CV, 2018 WL 6199229, at *3 (Tenn. Ct. App. Nov. 28, 2018).

Except in cases where this Court deems it prudent to "soldier on," a court's failure to comply with Rule 56.04 of the Tennessee Rules of Civil Procedure will result in this Court vacating the deficient order and remanding for further proceedings. *See id.* at *3-4. Here, having concluded that this appeal was improvidently granted as framed in our order granting the appeal, we are not rendering a decision on this appeal. We would further note, however, that the trial court's order being interlocutory in nature, it may be amended at any time before final judgment. *See Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983) ("[T]he order is interlocutory and can be revised at any time before the entry of judgment

adjudicating all the claims and rights and liabilities of all parties."). On remand, the trial court should endeavor to more clearly articulate the legal grounds upon which it granted the motion, lest any future appeal, interlocutory or otherwise, be potentially hindered by the lack of explanation exhibited by the order in its current form. *See Potter's Shopping Ctr., Inc. v. Szekely,* 461 S.W.3d 68, 72 (Tenn. Ct. App. 2014) ("The judgment at issue involves questions of law that require analysis and explanation."); *State v. Centurion Industria e Comercio de Cigarros, L.T.D.A.*, No. M2010-02602-COA-R3-CV, 2011 WL 2923725, at *7 (Tenn. Ct. App. July 20, 2011) ("The judgment at issue here involves complex questions of law, which require explanation and analysis. The trial court's order does not provide this information. Therefore, if this Court were to proceed with adjudication of the substantive issues, we would, at best, be speculating as to the reasoning behind the trial court's decision and the facts it considered.").

## CONCLUSION

For the foregoing reasons, we dismiss this appeal and remand for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE